UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
:
PHYLLIS STANTON,                    :   Civil Action No.
:
                 Plaintiff,         :   08 CV
:
      v.                            :
:   COMPLAINT
MERCK & CO., INC.,                  :
:
                 Defendant.         :   JURY TRIAL DEMANDED
:
------------------------------------X

Plaintiff Phyllis Stanton ("Plaintiff"), by her attorneys, for her Complaint against defendant Merck & Co., Inc. ("Merck" or "Defendant"), alleges:

1. This is a civil action for damages suffered by Plaintiff as a result of her being prescribed and ingesting Defendant's drug Fosamax.

## PARTIES

2. Plaintiff is a citizen and resident of the State of Utah, residing in Ferron, Utah.

3. At all times herein mentioned, Defendant was and is a New Jersey corporation, with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey 08889-0100.

4. At all times herein mentioned, Defendant did business in the States of New York and Utah.

## JURISDICTION

5. This Court has original jurisdiction over this action under 28 U.S.C. § 1332, in that the amount in controversy exceeds seventy five thousand dollars ($75,000.00) and Plaintiff is a citizen of a State which is different from the State where defendant is incorporated and has its principal place of business.

## FACTUAL BACKGROUND

6. Defendant designed, tested, developed, manufactured, labeled, marketed, distributed and sold Fosamax.

7. Fosamax is the brand name of alendronate sodium, which is in a class of prescription drugs called bisphosphonates. Fosamax is taken orally.

8. Fosamax was approved by the United States Food and Drug Administration for treatment of osteoporosis.

9. The product literature prepared by Merck and circulated to physicians for use in prescribing the drug contained no warning about osteonecrosis of the jaw or other bone structure.

10. In 2002 or before, Defendant knew or should have known that a physician reported that several of his patients who were given Aredia, another bisphosphonate, were diagnosed with

osteonecrosis of the jaw and that the physician believed a causal relationship existed between the use of bisphosphonates and osteonecrosis of the jaw.

11. Another group of physicians published a report about patients being diagnosed with osteonecrosis of the jaw after being given Aredia and Zometa, also a bisphosphonate. The report said, "the jaw complications presented in this review have had a major negative effect on the quality of daily life for each of these patients" and determined that "bisphosphonates may be at least partially responsible." Ruggiero, et al., "Osteonecrosis of the Jaws Associated with the Use of Bisphosphonates: A Review of 63 Cases," Journal of Oral and Maxillofacial Surgery, vol. 62, p. 533 (2004).

12. In September 2004 and May 2005, another manufacturer sent warnings to physicians regarding the risk of osteonecrosis of the jaw with the use of its bisphosphonates, Aredia and Zometa.

13. Defendant never issued any warnings or changed its product literature to warn of the risk of osteonecrosis of the jaw.

14. Plaintiff was prescribed and took Fosamax.

15. As a result of taking Fosamax, Plaintiff developed osteonecrosis of the jaw.

16. As a result of taking Fosamax Plaintiff suffered compensable injuries, including but not limited to the following:

    a. severe and permanent physical and medical injuries and associated disabilities;

    b. severe past and future pain and suffering;

    c. severe past and future mental anguish;

    d. loss of enjoyment of life;

    e. increased risk of health problems;

    f. past and future medical care and monitoring; and

    g. loss of past and future income.

## FIRST CLAIM FOR RELIEF

### [Strict Product Liability - Design Defect]

17. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 16 of the Complaint as if they were set forth here in full.

18. Defendant designed, tested, developed, manufactured, labeled, marketed, distributed and sold Fosamax.

19. Fosamax as designed, manufactured and sold by Defendant was defective in design or formulation in that it was unreasonably dangerous.

20. Fosamax as designed, manufactured and sold by Defendant was defective in design or formulation in that its

foreseeable risks exceeded the benefits associated with the design or formulation.

21. Fosamax as designed, manufactured and sold by Defendant was defective due to inadequate warnings because Defendant knew or should have known that the product created a risk of harm to consumers.

22. Fosamax as designed, manufactured and sold by Defendant was defective due to inadequate testing.

23. As the proximate cause and result of the defective condition of Fosamax as designed, manufactured and sold by Defendant, Plaintiff was injured.

### SECOND CLAIM FOR RELIEF

### [Strict Product Liability - Failure To Warn]

24. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 16 of the Complaint as if they were set forth here in full.

25. Defendant designed, tested, developed, manufactured, labeled, marketed, distributed and sold Fosamax.

26. Fosamax as designed, manufactured and sold by Defendant was not accompanied by proper warnings regarding possible adverse side effects.

27. Defendant knew or should have known about the possible adverse side effects of Fosamax, including osteonecrosis of the jaw.

28. As the proximate cause and result of Defendant's failure to properly warn physicians and consumers, Plaintiff was injured.

### THIRD CLAIM FOR RELIEF

#### [Negligence]

29. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 16 of the Complaint as if they were set forth here in full.

30. Defendant designed, tested, developed, manufactured, labeled, marketed, distributed and sold Fosamax.

31. Defendant had a duty to exercise reasonable care in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling Fosamax, including a duty to assure that users, like Plaintiff, did not suffer unreasonable adverse side effects, such as osteonecrosis of the jaw.

32. Defendant failed to exercise reasonable care in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling Fosamax in that Defendant knew or should

have known that Fosamax created an unreasonable risk of osteonecrosis of the jaw.

33. Defendant was negligent in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling Fosamax.

34. As the proximate cause and result of Defendant's negligence, Plaintiff was injured.

### FOURTH CLAIM FOR RELIEF

#### [Breach of Express Warranty]

35. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 16 of the Complaint as if they were set forth here in full.

36. Defendant expressly warranted, by and through statements made by Defendant or its authorized agents, that Fosamax was safe, effective, and fit for its intended use.

37. Plaintiff, and her agents, relied on the skill, judgment and representations of Defendant.

38. Fosamax did not conform to Defendant's express warranties in that it was not safe and fit for its intended use because it caused serious adverse side effects, including osteonecrosis of the jaw.

39. As the proximate cause and result of Defendant's breach of its express warranties, Plaintiff was injured.

### FIFTH CLAIM FOR RELIEF

#### [Breach of Implied Warranty]

40. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 16 of the Complaint as if they were set forth here in full.

41. Defendant impliedly warranted to Plaintiff, and her agents, that Fosamax was of merchantable quality and was safe and fit for its intended use.

42. Plaintiff, and her agents, relied on Defendant's skill and judgment.

43. Fosamax was not of merchantable quality or safe and fit for its intended use in that it caused serious adverse side effects, including osteonecrosis of the jaw.

44. As the proximate cause and result of Defendant's breach of its implied warranties, Plaintiff was injured.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Phyllis Stanton respectfully prays for relief and judgment against the defendant as follows:

(a) compensatory damages in an amount to be determined at trial;

(b) attorneys' fees, expenses, and costs of this action; and

(c) for any other relief this Court deems just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff respectfully requests a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  New York, New York
        May 1, 2008

                                        BEATIE AND OSBORN LLP

By: *Russel H. Beatie* (signature)

Russel H. Beatie (RB 4439)
Daniel A. Osborn (DO 2809)
Philip J. Miller (PM 1149)
521 Fifth Avenue, 34th Floor
New York, New York 10175
Telephone: (212) 888-9000
Facsimile: (212) 888-9664

THE POWELL LAW FIRM, L.C.
269 South Beverly Drive
Suite 1156
Beverly Hills, California 90212
Telephone: (888) 238-1998
Facsimile: (310) 388-1570

```
LAW OFFICES OF JEFFREY C. BOGERT
501 Colorado Boulevard
Suite 208
Santa Monica, California 90401
Telephone:  (310) 395-5025
Facsimile:  (310) 395-5071
```

*Attorneys for Plaintiff*
 Phyllis Stanton

-10-